JAMES COUNSELL *vs.* SYLVANUS M. HALL.

Bristol.    Oct: 27, 1887. — Jan. 4, 1888.    C. ALLEN & KNOWLTON, JJ., absent.

Machinery upon which a servant was employed became defective and dangerous. The master promised the servant that the defect should be remedied. The servant continued to attend to the machinery, knowing that the defect had not been remedied, and sustained an injury by reason of the defect. *Held*, in an action by him against the master for the injury, that the plaintiff was not entitled to a ruling that, on these facts, the defendant was liable.

TORT, for personal injuries sustained by the plaintiff while in the employ of the defendant.

Trial in the Superior Court, before *Knowlton*, J., who allowed a bill of exceptions in substance as follows:

The evidence of the plaintiff tended to show, that he entered into the employ of the defendant in March, 1885, taking charge of a small steam-engine of about six horse-power, as engineer, and continued in such employ until July 13, 1886, the time of his injury; that during his employment up to June 28, 1886, the engine, boiler, and appliances, including the glass water-gauge, were in good and suitable condition; that the glass water-

gauge occasionally broke and was replaced by the plaintiff, who received from the defendant proper ones adapted to the purpose; that the proper length of the gauge was about fourteen inches, it being cylindrical in form, hollow, and of an inside diameter of about a quarter of an inch; that, on June 28, 1886, the glass water-gauge which had been used since the preceding September gave out, and it was necessary to replace it with a new one; that the defendant, being informed of it, bought a water-gauge that was not fitted or adapted for the purpose, being too long and otherwise defective; that the defendant thereupon ground it down, and told the plaintiff to put it in place in connection with the boiler; that the plaintiff tried it as directed, and told the defendant that it was too long, and not adapted to the purpose; that thereupon he handed it back to the defendant, who took it and ground it down still more, leaving the end jagged and cracked about an eighth of an inch from the end; that the defendant then directed the plaintiff to put it in place in connection with the boiler; that the plaintiff objected to putting it in, and told the defendant that it was not suitable, and that it was shameful to put such a glass in; that the defendant replied, " Put it in now, and use it, and I will get another one; " that the plaintiff then put it in, but it jammed, and did not properly fit in place, as did those that had been before used, which were fitted and adapted to the purpose by the manufacturer; that the gauge so cracked and fitted was dangerous to be used; and that, on June 29, the plaintiff requested the defendant to get a proper one, and the defendant said he would when he got time to go into the city, though he did not procure one.

The plaintiff continued in the defendant's employ, running the boiler until July 13, when, while he was attending to his duty about the boiler and the engine, using due care, the glass water-gauge exploded, and a piece of the glass flew into his eye, causing the injury complained of.

The defendant introduced evidence tending to contradict all the contentions of the plaintiff referred to in his request for a ruling hereinafter stated, and there was much other evidence touching the question of negligence, and the other questions of the case. There was also testimony tending to show, that, when

the plaintiff entered the service of the defendant, he undertook to assume the responsibility of the management of the engine and boiler, the defendant not being skilled in that business.

The plaintiff requested the judge to instruct the jury as follows: " If a servant enters into an employment when the machinery is in a state of safety, and continues in the service, and while in the service an appliance of the machinery becomes out of repair, and it is necessary to withdraw it and replace it by another, and the employer for a temporary purpose replaces it by an appliance that is not suitable for the purpose, the use of which exposes the servant to greater risk and danger of injury, and the servant complains of it, and tells his employer that it is unsuitable, and the employer promises to replace it by a suitable one, but fails to do so, he is guilty of negligence; and, if an injury to the servant ensues in consequence thereof, he is responsible to the servant in damages therefor."

The judge refused to give the instruction requested, but instructed the jury generally, in terms not excepted to, in relation to the rights, duties, and liabilities of master and servant, and to the law of negligence, and as to what constitutes negligence, but did not state that any particular matters testified to would or would not constitute negligence.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*J. Brown*, for the plaintiff.

*W. Clifford*, for the defendant.

Holmes, J.  If machinery upon which a servant is employed has become dangerous, and the servant has complained of it, and has been promised that it shall be repaired, but is injured before the defect is remedied, and while he is reasonably expecting the promise to be performed, the promise is a circumstance to be considered by the jury in determining whether he has assumed the risk in the mean time, and whether he was using due care in working when he knew there was danger. But no case, we believe, has gone the length of deciding that the promise entitles the servant to recover as matter of law, which was the effect of the ruling asked. And if, as supposed in the request, the time for performance has gone by before the accident,

and, as must have been the fact, the servant knows that the repair has not been made, there is a very strong argument that the servant is no longer relying upon the promise, but has decided to take the risk.						*Exceptions overruled.*